2016 ND 156

### In the Interest of D.W.

Melanie Price Dornonville de la Cour, Assistant State's Attorney, Petitioner and Appellee,

v.

D.W., Respondent and Appellant.

No. 20160002.

Supreme Court of North Dakota.

July 25, 2016.

Brian L. Johnson, Assistant State's Attorney, Burleigh County Courthouse, Bismarck, ND, for petitioner and appellee.

Kent M. Morrow, Bismarck, ND, for respondent and appellant.

CROTHERS, Justice.

[¶ 1] D.W. appeals a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual. Because the district court's findings of fact and conclusions of law are supported by clear and convincing evidence, the order is affirmed.

I

[¶ 2] D.W. was civilly committed as a sexually dangerous individual in June 2004. D.W. requested discharge from civil commitment in December 2014. The district court found the State's expert, Dr. Jennifer Krance, and the independent expert, Dr. Stacey Benson, agreed D.W. remains a sexually dangerous individual and has serious difficulty controlling his behavior.

[¶ 3] Dr. Benson diagnosed D.W. with Factitious Disorder and stated he was "more mentally ill than ... sexually dangerous...." Dr. Benson testified Factitious Disorder "is where an individual is feigning or faking certain symptoms or signs of an illness." Dr. Benson believed transferring D.W. from the North Dakota State Hospital to the federal system would allow him access to the type of specialized mental health treatment he needs.

[¶ 4] Dr. Krance disagreed with Dr. Benson's diagnosis of Factitious Disorder. Dr. Krance testified no specific treatment for Factitious Disorder exists, but cognitive behavioral therapy and individual therapy are appropriate treatments and both are available at the North Dakota State Hospital.

[¶ 5] The district court denied D.W.'s petition for discharge, finding he continued to be a sexually dangerous individual with serious difficulty controlling his behavior and had access to the most appropriate and least restrictive therapy at the North Dakota State Hospital. D.W. appeals, arguing the findings for continued treatment were not supported by clear and convincing evidence and Dr. Benson's diagnosis of Factitious Disorder required alternative treatment.

## II

[¶ 6] D.W. argues the district court erred finding clear and convincing evidence that he remained a sexually dangerous individual.

"This Court reviews the civil commitment of a sexually dangerous individual under a modified clearly erroneous standard of review. We will affirm the district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. In reviewing the order, we give 'great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony.' We have explained that the district court is 'the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court's credibility determinations.' "

*In re Thill*, 2014 ND 89, ¶ 4, 845 N.W.2d 330 (internal citations omitted).

[¶ 7] Section 25-03.3-01(8), N.D.C.C., requires the State to prove three prongs to show an individual remains sexually dangerous:

"(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder,

a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct."

*In re Thill*, at ¶ 5. In addition to the three prongs, the U.S. Constitution requires the State prove the individual has "serious difficulty controlling his behavior." *In re E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686.

[¶ 8] The district court found, and both experts agreed, D.W. engaged in past sexually predatory conduct and has a sexual disorder characterized as paraphilia. D.W. does not challenge those findings and therefore concedes the State met its burden on the first two prongs of N.D.C.C. § 25-03.3-01(8). Regarding the third prong, the district court found D.W. is likely to engage in further acts of sexually predatory conduct. This finding is supported by clear and convincing evidence. At trial Dr. Krance testified:

"Q. Did you assess Mr. W.'s risk of engaging in further acts of predatory conduct during your review?

A. Yes.

Q. And do any of these diagnoses that you have here predispose him to engage in such acts?

A. The other specified paraphilic disorder, hebephilia, and the borderline personality disorder are both diagnoses that would make it more likely that Mr. W. would engage in sexually predatory conduct in the future."

[¶ 9] Dr. Benson also testified in regard to the third prong:

"Q. Did you come to any professional conclusion as to whether or not his mental or sexual disorders predispose him to act out or make him more likely to re-offend?

A. I did.

Q. And what was your professional conclusion?

A. They do."

[¶ 10] Because both experts agree D.W. was likely to engage in further acts of sexually predatory conduct, clear and convincing evidence supports the district court's finding that D.W. was likely to engage in further sexually predatory conduct.

[¶ 11] The U.S. Constitution requires that the State prove the individual has "serious difficulty controlling his behavior." *In re E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686. The district court found D.W. has serious difficulty controlling his behavior. Dr. Krance testified D.W. does not have the ability to control himself:

"Q. And this—his engaging in sexual activity [while committed], is this one of the most significant factors that you relied on in making your finding that he still is likely to engage in predatory conduct?

A. This is not the only factor that I relied upon in looking at Mr. W.'s history, his progression through the program and where he's at currently. The one thing I do find concerning about this is that Mr. W. has full awareness of what the rules of the facility are in not having sexual relationships with other residents. In addition, he has been consequenced [sic] or this has been a topic of discussion in his treatment programming in the past, even over this review period. So he's fully aware of what the rules of the facility are, but chooses to engage in these behaviors. He's acknowledged in the addendum that he can't control himself in certain relationships, and I do find that concerning as to the factor of serious

difficulty. When Mr. W. feels the urge or needs to complete some type of sexual act, having that ability to stop himself sometimes does not occur."

[¶ 12] Dr. Benson testified:

"Q. Now, you're aware of the fourth prong, so to speak?

A. I am.

Q. Serious difficulty in controlling his behavior. Did you assess Mr. W. on that factor?

A. I did.

Q. And how did you—what did you conclude?

A. I believe he does or will have serious difficulty controlling his behavior if released to the community."

[¶ 13] Because both experts agree D.W. would have serious difficulty controlling his behavior, the district court's finding was supported by clear and convincing evidence.

### III

[¶ 14] D.W. argues he would receive more effective treatment if he was discharged because he suffers from Factitious Disorder and does not have access to treatment. Dr. Benson testified D.W. suffers from Factitious Disorder and that he will remain a sexually dangerous individual unless it is treated. She is not aware of anyone at the North Dakota State Hospital who has expertise with Factitious Disorder.

[¶ 15] Dr. Krance did not agree with Dr. Benson. Dr. Krance testified D.W. does not suffer from Facticious Disorder but, even if he did, there is no specific treatment. Dr. Krance stated cognitive behavioral therapy and individual therapy would be appropriate treatments and those

treatments are available at the North Dakota State Hospital.

[¶ 16] D.W. argues he would receive more appropriate care if he were discharged from the North Dakota State Hospital and committed through the federal court system. D.W. alleges a federal treatment program would be more effective and less restrictive. Relevant law provides:

"If the respondent is found to be a sexually dangerous individual, the court shall commit the respondent to the care, custody, and control of the executive director. The executive director shall place the respondent in an appropriate facility or program at which treatment is available. The appropriate treatment facility or program must be the least restrictive available treatment facility or program necessary to achieve the purposes of this chapter. The executive director may not be required to create a less restrictive treatment facility or treatment program specifically for the respondent or committed individual."

N.D.C.C. § 25–03.3–13.

[¶ 17] The district court found D.W.'s argument that if the state released him, the federal government would incarcerate him to be speculative. The court order stated:

"While it has been argued that [D.W.] may get more effective treatment if discharged, the argument is based on speculation, both as to the diagnosis of Factitious Disorder and as to actions by the federal court system should he be discharged. [D.W.] has access to appropriate cognitive behavioral therapy and individual therapy at the North Dakota State Hospital."

[¶ 18] D.W. did not present evidence establishing any other treatment program or facility, including one used by the federal court system, is less restrictive and more appropriate for him than the North Dakota State Hospital. The State presented evidence from Dr. Krance that D.W.'s treatment is appropriate, that D.W. does not suffer from Factitious Disorder but, if he did, that treatment at the North Dakota State Hospital would be appropriate. Therefore, the district court's findings on this issue are not clear error.

## IV

[¶ 19] D.W. argues the district court order should have required the executive director to treat him for Factitious Disorder. D.W. did not request such an order at the commitment hearing. Even if D.W. did request an order for treatment of Factitious Disorder at the North Dakota State Hospital, he is not automatically entitled to receive that treatment. Section 25–03.3–13, N.D.C.C., states "[t]he executive director may not be required to create a less restrictive treatment facility or treatment program specifically for the respondent or committed individual." Because the statute states D.W. is not entitled to a specialized treatment program, the district court order finding D.W. already has access to the most appropriate and least restrictive care was not clear error.

## V

[¶ 20] Because the district court's findings of fact and conclusions of law are supported by clear and convincing evidence the order is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., STACY J. LOUSER, D.J., LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.

[¶ 22] The Honorable STACY J. LOUSER, D.J., sitting in place of SANDSTROM, J., disqualified.